IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ERIE

| | |
|---|---|
| S.A., et al,<br><br>Plaintiffs<br><br>vs.<br><br>PENNSYLVANIA DEPARTMENT OF CORRECTIONS et al,<br><br>Defendants | 1:24-CV-00343-SPB<br><br>SUSAN PARADISE BAXTER<br>United States District Judge<br><br>RICHARD A. LANZILLO<br>United States Magistrate Judge<br><br>REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS<br><br>RE: ECF NO. 70 |

## I. RECOMMENDATION

Plaintiffs S.A., A.M. #1, and A.M. #2 commenced this action under 42 U.S.C. § 1983 against employees of the Pennsylvania Department of Corrections ("DOC") to recover damages arising from sexual harassment and assaults they allege they endured during their incarceration at the DOC's State Correctional Institution at Cambridge Springs, Pennsylvania ("SCI-Cambridge Springs"). *See* ECF No. 66. Defendants George Little, Michael Zaken, Lisa Graves, Captain Dugan, Officer McCurdy, Officer Hoback, and Officer Sigler ("DOC Defendants") have moved under Fed. R. Civ. P. 12(b)(6) to dismiss Plaintiffs' Third Amended Complaint. ECF No. 70.

For the following reasons, it is recommended that Defendants' motion be granted in part and denied in part. Specifically, the motion should be granted as to all claims against Defendants Little, Zaken, Sigler, and as to Count III (failure to intervene) against all Defendants. The motion should be denied as to Count I and

Count II (Eighth Amendment) to the extent those claims are asserted against Defendants Graves, Dugan, McCurdy, and Hoback, and as to Count IV (failure to train) to the extent the claim is asserted against Defendants Graves, Dugan, and Hoback.

## II. REPORT

### A. Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court accepts as true all factual allegations of the complaint and views them in a light most favorable to the plaintiff. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) (citing *Worldcom, Inc. v. Graphnet, Inc.*, 343 F.3d 651, 653 (3d Cir. 2003)). In making its determination under Rule 12(b)(6), the court is not opining on whether the plaintiff is likely to prevail on the merits; rather, the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235–36 (3d ed. 2004)). A complaint should only be dismissed pursuant to Rule 12(b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

While a complaint does not require detailed factual allegations to survive a motion to dismiss, it must provide more than labels and conclusions. *Id.* at 555. A

"formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Moreover, a court need not accept inferences drawn by a plaintiff that are unsupported by the facts alleged in the complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Nor must the court accept legal conclusions disguised as factual allegations. *See Twombly*, 550 U.S. at 555; *McTernan v. City of York, Pennsylvania*, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

B. Relevant Procedural History

Plaintiff S.A. commenced this action in the United States District Court for the Middle District of Pennsylvania. The action was transferred to this Court on December 18, 2024. *See* ECF No. 6. Subsequent amended pleadings added Plaintiffs A.M. #1 and A.M. #2. *See* ECF Nos. 13, 19. Plaintiffs' Third Amended Complaint ("TAC") is the operative pleading before the Court. *See* ECF No. 66.

The TAC names the following eight identified DOC officials and six "Doe" officials as defendants:

- Alfonzia Newsome, Correctional Officer (ECF No. 66, ¶ 5);[1]
- George Little, Secretary of Corrections for the DOC (*Id.*, ¶ 6);
- Michael Zaken, Deputy Secretary of Corrections for the Western Region (*Id.*, ¶ 7);

[1] The Court entered a default judgment against Defendant Newsome on March 12, 2026. *See* ECF No. 67.

- Lisa Graves, Superintendent of SCI Cambridge Springs (*Id.*, ¶ 8);
- Captain Dugan, Head of Security for SCI Cambridge Springs (*Id.*, ¶ 9);
- Officer McCurdy, Security Officer for Inmate Safety at SCI Cambridge Springs (*Id.*, ¶ 10);
- Officer Hoback, Correctional Officer at SCI Cambridge Springs (*Id.*, ¶ 11);
- Officer Sigler, Correctional Officer at SCI Cambridge Springs (*Id.*, ¶ 12);
- John Doe Unit Sergeants 1–3 (*Id.*, ¶ 13); and
- John Doe PREA Coordinators 1–3 (*Id.*, ¶ 14).

The DOC Defendants have moved to dismiss all claims against them. *See* ECF Nos. 70, 71. Plaintiffs have filed a brief in opposition. *See* ECF No. 73. The motion is ripe for disposition.

C. Factual Allegations

For purposes of the DOC Defendants' motion to dismiss, the Court accepts as true the following factual allegations of the TAC.

1. Newsome's abuse of S.A.

On December 11, 2022, Defendant Newsome, an SCI-Cambridge Springs corrections officer, followed S.A. as she was returning to her cell. ECF No. 66, ¶ 20. Newsome blocked the entrance of the cell and asked her whether she needed a request slip. *Id.*, ¶ 21. S.A. declined. *Id.* Newsome then placed his hands down S.A.'s pants and groped her. *Id.*, ¶ 22. None of the John Doe Unit Sergeants were present. *Id.*, ¶ 23. Newsome was not assigned to S.A.'s unit. *Id.*, ¶ 24.

Fearing retaliation, S.A. did not file a PREA report, and instead "requested to speak to Security Officer Defendant McCurdy privately several times in her office to report what had happened to her. Defendant McCurdy, however, did not call S.A. to speak. *Id.*, ¶ 30. In approximately August 2023, Defendants McCurdy, Dugan, and Hoback approached S.A. and told her that Newsome had confessed to inappropriate conduct with her. *Id.*, ¶ 31. At that point, S.A. disclosed the sexual assault and submitted a PREA report. *Id.* Newsome was transferred to a different unit shortly thereafter. *Id.*, ¶ 34.

Sometime prior to her assault, S.A. heard two unnamed DOC employees discussing unspecified "improper and unconstitutional" conduct by Newsome in a different housing unit. *Id.*, ¶ 25. According to those DOC employees, Newsome allegedly impregnated an inmate named "Kayla," and behaved "inappropriate[ly]" with another inmate, "Ashley." *Id.*, ¶¶ 25–26. S.A. heard that Kayla left prison and died giving birth, so no investigation took place. *Id.*, ¶ 26.

2. Newsome's abuse of A.M. #1

On six separate occasions in April 2023, Newsome sexually abused A.M. #1. *Id.*, ¶ 36. On one occasion, Newsome waited for A.M. #1 to be alone in her cell, ordered her to undress, threatened her with disciplinary action if she failed to comply, and after she complied, sexually assaulted her. *Id.*, ¶¶ 38–39. Newsome's conduct also involved sexual harassment leading up to the physical abuse, and on one occasion, Newsome attempted to communicate with A.M. #1 via email in violation of SCI-Cambridge Springs's policies. *Id.*, ¶¶ 37, 44.

A.M. #1 filed a PREA report in May 2023, and Newsome was assigned to a different unit shortly thereafter. *Id.*, ¶ 41. Three John Doe PREA Coordinators failed to provide A.M. #1 with proper counseling prior to and after her report. *Id.*, ¶ 42. Sometime later, Defendants Dugan, McCurdy, Hoback, and others informed A.M. #1 that "they were aware of the sexual abuse against her and several other inmates" because Newsome confessed to that abuse. *Id.*, ¶ 43.

3. Newsome's abuse of A.M. #2

In May 2023, after his transfer out of A.M. #1's unit, Newsome began sexually harassing A.M. #2 in her unit by commenting on her buttocks and breasts. *Id.*, ¶¶ 47, 49. Newsome also requested A.M. #2 do extra cleaning near his desk, isolating her from other inmates. *Id.*, ¶ 51. He referred to A.M. #2 as his "special helper" to at least one other Correctional Officer. *Id.* And on one occasion, while A.M. #2 was at a commissary kiosk, Newsome asked whether she "was messaging anyone and receiving funds in her account." *Id.*, ¶ 52. He then offered to add funds to A.M. #2's account in earshot of another unnamed Correctional Officer. *Id.*

Over time, Newsome's misconduct escalated from verbal harassment to physical abuse. In approximately June 2023, Newsome went to A.M. #2's cell doorway and attempted to kiss her and force his hand down her pants. *Id.*, ¶ 53. Shocked by this conduct, A.M. #2 took a step back. *Id.* Newsome then abandoned his assault, but as he departed A.M. #2's cell, he commented that "he would be back later." *Id.*, ¶ 53. Fearing retaliation, A.M. #2 initially did not report the assault. Instead, she

attempted to avoid Newsome by staying in common areas or with other inmates. *Id.*, ¶ 55. In or around July 2023, Newsome again sexually assaulted A.M. #2. *Id.*, ¶ 56.

4. Newsome's conduct toward other inmates and subsequent arrest

Prior to Newsome's sexual assault of S.A., SCI-Cambridge Springs Therapist Dr. McClellan reported Newsome to Defendants Dugan and McCurdy. *Id.*, ¶ 27. McClellan "overheard Newsome making inappropriate comments to the female inmates and behaving inappropriately with them." *Id.* Before Newsome sexually assaulted the Plaintiffs, Defendants Sigler, McCurdy, Hoback, and John Doe Unit Sergeants 1–3 witnessed what they describe as Newsome's inappropriate socializing with inmates, although the TAC does not describe the conduct on which they base this characterization. *Id.*, ¶ 28. Defendants Little, Zaken, Dugan, McCurdy, and Hoback did not address the unspecified improper socializing. *Id.*, ¶¶ 28–29.

In August 2023, Defendants McCurdy, Dugan, and Hoback told A.M. #2 that "Newsome had confessed that something happened between him and Plaintiff A.M. #2 as well as over a dozen others and according to the same Defendants, 'listed them like they were trophies.'" *Id.*, ¶ 57. After McCurdy, Dugan, and Hoback informed A.M. #2 of Newsome's confession, she reported his two assaults against her and completed a PREA report. *Id.*, ¶ 58. A.M. #2 requested a female PREA counselor, but her request was denied. *Id.*, ¶ 59.

In July 2023, the Pennsylvania State Police opened an investigation of multiple reports of sexual misconduct by Newsome. *Id.*, ¶ 61. On July 29, 2024, Newsome was criminally charged with three third-degree felony counts of

institutional sexual assault, three misdemeanor counts of indecent assault with forcible compulsion, and three summary counts of harassment. *Id.*, ¶ 62. In August 2025, Newsome pled guilty to three counts of felony sexual assault. *Id.*

D. Discussion

1. Claims

Plaintiffs assert four causes of action:

| | |
|---|---|
| Count I | An Eighth Amendment cruel and unusual punishment claim against all Defendants; |
| Count II | An Eighth Amendment excessive force claim against all Defendants; |
| Count III | An Eighth Amendment failure-to-intervene claim against all Defendants; and |
| Count IV | An Eighth Amendment failure-to-train claim against Defendants Little, Zaken, Graves, Dugan, and Hoback. |

2. The TAC states Eighth Amendment claims against Defendants Graves, Dugan, McCurdy, and Hoback but not against Defendants Little, Zaken, or Sigler.

Counts I and II of the TAC assert Eighth Amendment claims against all Defendants based on Newsome's sexual abuse and harassment of Plaintiffs. As a threshold matter, the TAC unquestionably states an Eighth Amendment claim against Defendant Newsome. *See Ricks v. Shover*, 891 F.3d 468, 473 (3d Cir. 2018) (recognizing that "sexual abuse of prisoners, once overlooked as a distasteful blight on the prison system, offends our most basic principles of just punishment") (quoting *Crawford v. Cuomo*, 796 F.3d 252, 260 (2d Cir. 2015)). *See also Helling v. McKinney*, 509 U.S. 25, 32 (1993) (holding that the prohibition against cruel and unusual punishment includes that prison officials not subject inmates to conditions of

confinement that deprive them of one or more basic human needs, including reasonable safety).[2] The question presented by the DOC Defendants' motion is whether the TAC alleges facts sufficient to extend liability for Newsome's misconduct to them based on their conduct as supervisors.

"Supervisory liability cannot be based solely upon the doctrine of respondeat superior." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1478 (3d Cir. 1990) (citing *Rizzo v. Goode*, 423 U.S. 362, 377 (1976)). A supervisor or policymaker is liable for a subordinate's unconstitutional acts only if he either: (1) with deliberate indifference to the consequences, established and maintained a policy, practice, or custom that directly caused the constitutional harm; or (2) participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct. *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004).

To allege supervisory liability based on a policy or custom, the plaintiff must identify the challenged policy or custom, attribute it to the defendant, and allege facts to support a causal link between the execution of the policy or custom and the plaintiff's constitutional injury. *See Losch v. Borough of Parkesburg*, 736 F.2d 903, 910 (3d Cir. 1984). A policy exists "when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official

[2] Plaintiffs also characterize their Eighth Amendment claim as an excessive force claim. To state an excessive force claim under the Eighth Amendment, a plaintiff must allege facts to support that force was applied "maliciously and sadistically to cause harm," rather than in a good-faith effort to maintain or restore discipline. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000). This theory of liability is based on the same conduct by Newsome as Plaintiffs' other Eighth Amendment theories and thus duplicative of those theories.

proclamation, policy, or edict," and a custom exists where "'practices of state officials [are] so permanent and well settled' as to virtually constitute law." *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 481 (1986) (policy), and *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) (custom)).

The TAC broadly alleges that Defendants, including Zaken, Graves, Little, and Sigler, "create[ed] a custom and pattern and practice of tolerating and accepting sexual predators at [SCI-Cambridge Springs]," and that "they each maintained the practice and custom of Newsome's sexual misconduct being tolerated against inmates." ECF No. 66, ¶ 29, 46. But such conclusory statements cannot support liability. *See Twombly*, 550 U.S. at 570. Instead, Plaintiffs must allege facts to support that each of the named DOC Defendants engaged in conduct to support their conclusions.

The TAC does not allege facts to support that Zaken, Graves, or Little adopted a policy that caused the violation of Plaintiffs' Eighth Amendment rights or that any of these three Defendants permitted sexual misconduct by subordinates so "permanent and well-settled as to virtually constitute law." *See Andrews*, 895 F.2d at 1480. Thus, the TAC does not support supervisory liability of Zaken, Graves, or Little based on policy or custom.

To plead supervisory liability based on participation, direction, or acquiescence, Plaintiffs must allege facts to support an inference that the supervisor personally participated in, directed, or had actual knowledge of and acquiesced in the

subordinate's misconduct. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). "Allegations of participation or actual knowledge and acquiescence . . . must be made with appropriate particularity." *Id.* This includes place and time allegations; a "mere hypothesis that an individual defendant had personal knowledge of or involvement in depriving" the plaintiff of her rights cannot establish a supervisor's personal involvement. *Gannaway v. PrimeCare Med., Inc.*, 150 F. Supp. 3d 511, 526–27 (E.D. Pa. 2015), *aff'd sub nom*, *Gannaway v. PrimeCare Med., Inc*, 652 F. App'x 91 (3d Cir. 2016) (citing *Rode*, 845 F.2d at 1208). *See also Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005). The TAC alleges no facts to support that any DOC Defendant participated in or directed Newsome's abusive conduct. Accordingly, the only theory of supervisory liability potentially available to Plaintiffs is that *each* DOC Defendant had actual knowledge of and acquiesced in Newsome's misconduct.

"Although a court can infer that a defendant had contemporaneous knowledge of wrongful conduct from the circumstances surrounding a case, the knowledge must be actual, not constructive." *Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015) (citing *Baker v. Monroe Twp.*, 50 F.3d 1186, 1194 (3d Cir.1995); *Rode*, 845 F.2d at 1201 n. 6). In *Baker v. Monroe Tp.*, for example, the court found sufficient evidence of knowledge to support supervisory liability where the defendant was present at the scene of an unconstitutional use of force, which was a small apartment. 50 F.3d at 1193. Thus, Plaintiffs are not required to allege that a Defendant personally observed subordinate misconduct to support actual knowledge. But they must at least allege facts to show that circumstances placed the Defendant

on notice of the misconduct. *See McKinney v. Asst. Superintendent George Robinson*, 2016 WL 7189832, at *6 (D.N.J. Dec. 12, 2016) (dismissing claims against supervisory defendants because the "Plaintiff provide[d] no facts explaining how" a defendant "was on notice of Plaintiff's ongoing legal mail issues").

Guided by the foregoing principles, the allegations of the TAC as to Little, Zaken, Graves, Hoback, McCurdy, and Sigler will be examined to determine whether they support a plausible inference of actual knowledge as to each. In support of such an inference, Plaintiffs emphasize the significant supervisory responsibilities of each Defendant.[3] But supervisory authority and responsibilities alone do not support actual knowledge. *See Rode* 845 F.2d at 1208. To hold otherwise would adopt a "should have known" standard of notice, which is a negligence concept incompatible with the actual knowledge necessary to support a supervisor's deliberate indifference.

---

[3] According to the TAC, Little, as Secretary of the DOC, was "responsible for developing, implementing, and overseeing implementation of policies and procedures, including compliance with [PREA]." ECF No. 66, ¶ 6. Little "was responsible for ensuring that administrators and staff at DOC facilities, including [SCI-Cambridge Springs], took steps to address the problem of custodial sexual assault and for ensuring the reasonable safety of women in [SCI-Cambridge Springs] custody." *Id.*, ¶ 6. The TAC describes Defendant Zaken's role similarly. Zaken, as Deputy Secretary for the Western Region, "was responsible for developing, implementing, and overseeing implementation of policy and procedures, including compliance with PREA, at DOC facilities in the Western Region, including [SCI-Cambridge Springs]." *Id.*, ¶ 7. Like Little, Zaken was responsible for "ensuring the reasonable safety of women in [SCI-Cambridge Springs] custody" and verifying administrators took care to do the same. *Id.* The TAC further identifies Defendant Graves, "Superintendent at [SCI-Cambridge Springs] at all relevant times." Graves was responsible for day-to-day activities at the prison including "compliance with PREA, promulgating rules, regulations, policies, and procedures to ensure the reasonable safety of all [SCI-Cambridge Springs] prisoners." *Id.*, ¶ 8. She "was responsible for supervising, training, assigning, and disciplining all employees at [SCI-Cambridge Springs], including Defendants Newsome, Dugan, McCurdy, and Hoback." *Id.*

a. Secretary Little

The only allegations of fact to support Secretary Little's actual knowledge of Newsome's misconduct appear in paragraph 26 of the TAC, wherein Plaintiffs allege:

> Upon information and belief, inmate 'Kayla' became pregnant while incarcerated and it was believed Defendant Newsome impregnated her. Upon information and belief, prior to Newsome's sexual assault against Plaintiffs, John Doe PREA Coordinator Defendants #1-3, Defendant Little, Defendant Zaken, Defendant Dugan, Defendant McCurdy, Defendant Hoback and Defendant Graves learned about these serious allegations that Newsome impregnated Kayla while she was an inmate at SCICS and Defendant Newsome was a Correctional Officer, but did not complete a full investigation because inmate Kayla had been released and died before giving birth. Defendant Newsome, however remained employed at SCICS and allowed direct contact with the women in custody at SCICS.

ECF No. 66, pp. 6–7.

These allegations are far too conclusory and speculative to support an inference that Secretary Little knew that Newsome impregnated inmate Kayla. The allegation discloses none of the "information" upon which Plaintiffs base their belief that Little "learned" about the allegation that Newsome had impregnated inmate Kayla or that she had any knowledge of the incomplete investigation. Instead, Plaintiffs simply add Secretary Little to the list of local prison officials and then broadly allege based upon undisclosed "information" that each knew of the allegations regarding Newsome and inmate Kayla. Like the plaintiff in *McKinney*, Plaintiffs here "provide no facts explaining how" Little was "on notice" of the allegations regarding Newsome's abuse of inmate Kayla. 2016 WL 7189832, at *6. Instead, they offer only a "mere

hypothesis" that he possessed the requisite knowledge, which is insufficient to support her personal involvement. *Gannaway*, 150 F. Supp. 3d at 526–27.

Plaintiffs' claims against Little should be dismissed.

b. Deputy Secretary Zaken

The claim against Deputy Secretary Zaken suffers from the same deficiencies as the claim against Little. As against Little, the only facts offered to support Zaken's actual knowledge of Newsome's misconduct are those in paragraph 26 of the TAC regarding the alleged pregnancy of inmate Kayla. As with Little, these allegations do not support Zaken's personal involvement because they constitute a factually-unsupported hypothesis that Zaken knew of the allegations of Newsome's abuse of inmate Kayla.

Plaintiffs' claims against Zaken should be dismissed.

c. Superintendent Graves, Security Captain Dugan, Security Officer McCurdy, and Officer Hoback

In contrast to the allegations against Little and Zaken, those against Graves, Dugan, McCurdy and Hoback are minimally sufficient to survive the DOC Defendants' motion to dismiss. First, an inference of actual knowledge of Newsome's misconduct is far more plausible as to each of these Defendants because each was physically present at SCI-Cambridge Springs. Each was in a position to personally observe Newsome and his interaction with female inmates and to otherwise learn of his inappropriate conduct. Although Plaintiffs' allegations regarding Newsome's misconduct prior to the abuse of the Plaintiffs in this case remain vague, they cast the abuse as pervasive, which circumstantially supports an inference that Graves,

Dugan, McCurdy and Hoback knew of it based on their involvement in day-to-day matter of security and PREA compliance. Dugan was head of security and responsible "for the safety of women in [SCI-Cambridge Springs] custody, including Plaintiffs." ECF No. 66, ¶ 9. McCurdy served as a "security officer." *Id.*, ¶ 10. And Officer Hoback held responsibility for "check[ing] in and oversee[ing] each of the units where Plaintiffs resided," along with enforcement of policies and discipline of staff. *Id.*, ¶ 11. All three had some level of direct supervisory authority over Newsome. Dugan and McCurdy are alleged to have learned about Newsome's prior sexual misconduct toward other inmates through an email from Dr. McClellan, "a therapist employed to treat [SCI-Cambridge Springs] inmates" who "overheard Newsome making inappropriate comments to the female inmates and behaving inappropriately with them." *Id.*, ¶ 27. McCurdy and Hoback are alleged to have observed Newsome "sitting by the correctional officer desk alone or one-on-one with female inmates and socializing inappropriately, including specifically, frequently with an inmate named 'Priscilla.'" *Id.*, ¶ 28. Although the reference to "socializing inappropriately" is vague and standing alone would not support knowledge of Newsome's misconduct, it has some circumstantial relevance at this stage of the case. In sum, the allegations regarding the supervisory DOC Defendants physically present at SCI-Cambridge Springs are sufficient to support their actual knowledge of Newsome's abusive conduct. And as to each of these Defendants, Plaintiffs allege that they either took no action or unduly delayed action to stop the misconduct in deliberate indifference to the Plaintiffs' rights.

The DOC Defendants' motion to dismiss should be denied as to Plaintiffs' Eighth Amendment claim against Defendants Graves, Dugan, McCurdy and Hoback.

d. Officer Sigler

The TAC does not allege that Officer Sigler exercised any supervisory authority over Newsome. Rather, the TAC suggests that Sigler and Newsome were equals as fellow correctional officers of comparable authority. *See id.*, ¶ 12. Thus, the relevant question in determining Sigler's personal involvement is whether the TAC alleges sufficient facts to support an inference that he participated in, or otherwise approved of, Newsome's misconduct. *See Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007) ("A defendant in a civil rights action . . . 'cannot be held responsible for a constitutional violation which he or she neither participated in nor approved.'" (quoting *C.H. ex rel. Z.H. v. Olivia*, 226 F.3d 198, 201 (3d Cir. 2000))). It offers only vague assertions that Sigler observed Newsome "acting inappropriately" or engaging in "inappropriate conduct." ECF No. 66, ¶ 49, 51. The TAC does not allege Sigler knew about the alleged incident with inmate Kayla, nor that he knew about Newsome being subject to a prior PREA complaint. The only specific allegation about Sigler is that he denied A.M. #2 further counseling with a female counselor after three sessions. *Id.*, ¶ 59. Even then, as noted in the Report and Recommendation recommending dismissal of the Second Amended Complaint, "[i]t is unclear whether Plaintiffs are alleging that Sigler provided A.M. #2 with three counseling sessions and some other person denied her further counseling with a female counselor or that Sigler denied A.M. #2 additional sessions with a female counselor." ECF No. 49, p. 18, *report and recommendation adopted*, ECF No. 65. As noted, no precedent exists to support that

an inmate has a constitutional right to a counselor of a preferred gender. Thus, the TAC fails to support the personal involvement of Sigler, and the DOC Defendants' motion should be granted as to Sigler.

For the foregoing reasons, the DOC Defendants' motion to dismiss as to Counts I and II of the TAC should be granted as to Defendants Little, Zaken, and Sigler and denied as to Defendants Graves, McCurdy, and Hoback.

3. The TAC fails to allege facts to support a failure to intervene claim against any Defendant.

At Count III of the TAC, Plaintiffs assert that each DOC Defendant failed to intervene in Newsome's sexual abuse of Plaintiffs. A corrections officer may be directly liable under the Eighth Amendment for failing to intervene in an assault upon an inmate if the officer had a reasonable opportunity to act and failed to do so. *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002); *see also Bistrian v. Levi*, 696 F.3d 352, 371–72 (3d Cir. 2012), *abrogated on other grounds by Mack v. Yost*, 968 F.3d 311 (3d Cir. 2020). Like Counts I and II, Count III fails against Little, Zaken, and Sigler based on their lack of personal involvement. And, more broadly, the claim fails against Graves, McCurdy, and Hoback based on the complete absence of factual allegations to support that any of these Defendants had a realistic opportunity to intervene in Newsome's misconduct. Liability under a failure-to-intervene theory requires allegations of facts showing that the officer was present, had a realistic opportunity to intervene, and acted unreasonably in failing to prevent the harm. *See Smith*, 293 F.3d at 650–51; *see also Byrd v. Clark*, 783 F.2d 1002, 1007 (11th Cir. 1986); *Byrd v. Brishke*, 466 F.2d 6, 11 (7th Cir. 1972). Plaintiffs do not allege that

any DOC Defendant witnessed Newsome's sexual abuse of S.A., A.M #1, or A.M. #2. Accordingly, Count III should be dismissed as to all DOC Defendants.[4]

4. The TAC fails to allege facts sufficient to state a failure to train claim against Little and Zaken, but it is minimally sufficient as to Graves, Dugan, and Hoback.

At Count IV of the TAC, Plaintiffs allege that Little, Zaken, Graves, Dugan, and Hoback failed to train Defendants Newsome, McCurdy, and John Doe PREA Counselors 1–3 and that this failure caused their constitutional injury. A supervisor's liability under § 1983 for failing to train or supervise subordinates arises only where the failure amounts to the defendant supervisor's "deliberate indifference" to the rights of persons with whom the subordinate employees will come into contact. *Smart v. Borough of Bellmawr*, 2013 WL 2933638, *1 (3d Cir. June 17, 2013) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). Thus, where a need for "more or different training ... is so obvious, and the inadequacy so likely to result in constitutional violations, that the failure to train ... can fairly be said to represent official policy," and that failure to train "actually causes injury," a supervisor may be held liable. *City of Canton*, 489 U.S. at 390. Moreover, in resolving the issue of supervisory liability,

> the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform.

---

[4] Plaintiffs do not assert a "failure-to-protect" claim, but their allegations may be read to implicate this theory of liability. To state such a claim, they must allege facts that plausibly support findings that "(1) [Plaintiffs were] incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to [the prisoners'] health and safety, and (3) the official's deliberate indifference caused [the prisoners] harm." *Bistrian*, 696 F.3d at 367; *see also Proctor v. James*, 811 Fed. App'x 125, 128 (3d Cir. Apr. 29, 2020). When the plaintiff's deliberate indifference claim is based on the risk of an assault, the plaintiff must show that the defendant was aware of a *specific risk* that the perpetrator would assault the plaintiff, and not simply a general risk that an assault might occur. *See Bistrian v. Levi*, 696 F.3d 352, 371 (3d Cir. 2012) (quoting Farmer, 511 U.S. at 833), *abrogated in nonrelevant part as recognized by Mack v. Yost*, 968 F.3d 311, 319 n.7 (3d Cir. 2020). Here, the risk of harm presented by Newsome was not particular to a single inmate or identifiable group of inmates and therefore was too generalized to support a failure-to-protect claim.

> That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the [supervisor], for the officer's shortcomings may have resulted from factors other than a faulty training program.... Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training.... Moreover, for liability to attach ... the identified deficiency in a ... training program must be closely related to the ultimate injury.

*Id.* at 390–91.

To prevail on a failure-to-train theory at this stage, "a plaintiff must demonstrate that a supervisor was on notice of a deficiency in his or her training program. A pattern of similar constitutional violations is typically necessary for purposes of failure to train." *Owens v. Coleman*, 629 Fed. App'x 163, 167 (3d Cir. Nov. 10, 2015). "[T]he complaint must identify the training program that the plaintiff believes is deficient, describe that deficiency, and explain how the deficiency caused the plaintiff's injuries." *Alexander v. Bucks Cnty.*, 2023 WL 3229928, at *8 (E.D. Pa. May 2, 2023). "[A] conclusory allegation that an incident would not have occurred if the perpetrator was properly trained is not enough." *Graham v. New Jersey*, 2022 WL 3010856, at *11 (D.N.J. Sep. 2, 2022).

As discussed above, the TAC does not support an inference that Defendants Little or Zaken had knowledge of any pattern of misconduct by Newsome at SCI-Cambridge Springs. Nor does it allege facts to support an inference that any deficiency in abuse prevention training existed systemically within DOC correctional institutions. But as also discussed, the TAC minimally supports an inference that Defendants Graves, Dugan, and Hoback had knowledge of a pattern of sexual

misconduct. And although the TAC does not specify the specific roles of Graves, Dugan, and Hoback, the areas of responsibility the TAC attributes to each allows for a plausible inference regarding their respective training responsibilities.

Unlike Plaintiffs' prior iterations of their complaint, the TAC also alleges, albeit vaguely, the deficiencies in training upon which they base their claim. It avers that deficient training was provided regarding "(a) Proper handling and investigation of allegations of sexual misconduct, including correctional officers targeting inmates; (b) Proper oversight of correctional officers in charge of the safety and well-being of inmates, including observing and being able to identify red flag behavior in correctional officers; (c) Properly addressing reports and/or complaints of sexual misconduct by correctional officers upon receiving reports of inappropriate conduct by inmates." ECF No. 66, ¶ 108. The TAC also alleges that "ineffective training methods" facilitated Newsome's repeated transfer between units following reports of inmate sexual harassment and assault. *Id.*, ¶ 63. *See also* ECF No. 73, p. 24 ("Instead of suspending Newsome or conducting a thorough investigation, SCICS Defendants had Newsome transferred."). The TAC alleges that these deficiencies effectively allowed Newsome's misconduct to go unchecked and thereby caused Plaintiffs' injuries. *See* ECF No. 66, ¶¶ 106–08.

For these reasons, the DOC Defendants' motion to dismiss should be granted as to Count IV as asserted against Defendants Little and Zaken and denied as asserted against Defendants Graves, Dugan, and Hoback.

E. Conclusion

For the foregoing reasons, Defendants' motion to dismiss should be granted in part and denied in part as follows: The motion should be granted as to all claims against Defendants Little, Zaken, and Sigler and as to Count III (failure to intervene) against all DOC Defendants. The motion should be denied as to Count I and Count II (Eighth Amendment) to the extent those claims are asserted against Defendants Graves, Dugan, McCurdy, and Hoback, and as to Count IV (failure to train) to the extent the claim is asserted against Defendants Graves, Dugan, and Hoback. It is recommended that further leave to amend as to dismissed claims against Little, Zaken, and Sigler be denied as futile. Plaintiffs have been permitted multiple opportunities to amend as to these Defendants and have demonstrated that they are not possessed of facts to support a viable claim against them.

If this recommendation is adopted, the following claims will remain: Count I (Eighth Amendment) and Count II (Eighth Amendment) against Defendants Graves, Dugan, McCurdy, and Hoback; and Count IV (failure to train) against Defendants Graves, Dugan, and Hoback. The claims against Defendants Newsome, against whom default judgment has been entered, and against the "Doe" Defendants are not the subject of the DOC Defendants' motion and this R&R.

## III. NOTICE

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72((b)(2), and Local Rule 72(D)(2), the parties are permitted to file written objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to timely file objections will

waive the right to appeal. *Brightwell v. Lehman*, 637 F.3d 187, 193 n. 7 (3d Cir. 2011). Any party opposing objections may file their response to the objections within fourteen (14) days thereafter in accordance with Local Civil Rule 72(D)(2).

DATED this 13th day of November, 2026.

RICHARD A. LANZILLO
UNITED STATES MAGISTRATE JUDGE