**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| S.A., A.M.#1 & A.M.#2, | : | |
| | : | Civil Action No. 24-cv-00343 |
| Plaintiffs, | : | |
| | : | |
| v. | : | Judge Susan Paradise Baxter/ |
| | : | Chief Magistrate Judge Lanzillo |
| PENNSYLVANIA DEPARTMENT OF CORRECTIONS, et al., | : | |
| | : | |
| Defendants. | : | Filed via Electronic Case Filing |

**DEFENDANTS' OBJECTIONS TO THE MAGISTRATE'S REPORT & RECOMMENDATION**

Background

Plaintiffs filed a third amended complaint ("TAC")—the operative pleading—following dismissal of the three prior versions. *See Document Nos. 1, 10, 11, 13, 15, 16, 17, 18, 19, 49, 65, 66.* The TAC names former Secretary Little, Deputy Secretary Zaken, Superintendent Graves, Captain Dugan, Officer McCurdy, Officer Hoback and Officer Sigler, as Defendants.[1] Plaintiffs are inmates confined within the State Correctional Institution at Cambridge Springs. *See Document No. 66.*

Within the pleadings, it is alleged Newsome sexually assaulted S.A. on December 11, 2022; however, S.A. did not report this incident at that time. In August of 2023, Defendants McCurdy, Dugan and Hoback, informed S.A. that Newsome had

[1] Former corrections officer Alfonzia Newsome, various John Does, and "any other as yet-identified employees," are also listed as Defendants, whom the undersigned does not represent.

confessed to inappropriate contact with her. It was at that time that S.A. first disclosed Newsome had assaulted her. *See Document No. 66.*

Regarding A.M.#1, it is alleged that Newsome sexually abused her in April of 2023; she submitted a PREA complaint "in approximately May of 2023." Also, in "approximately" May of 2023, Newsome was assigned to the housing unit upon which A.M.#2 resided and sexually assaulted her. Like S.A., A.M.#2 did not report these assaults until she was approached by Defendants McCurdy, Hoback and Dugan, in August of 2023. *See Document No. 66.*

The pleadings are replete with unsupported references to Newsome's conduct with other inmates, which Plaintiffs baldly assert was "known and acquiesced" by Defendants. Additionally, there are vague references to "reported concerns" regarding unspecified "inappropriate" behavior involving unidentified inmates, and Newsome "socializing inappropriately." Along these lines, Plaintiffs make a wholly unsupported claim that "shortcomings" in the investigative process "reflect a systemic failure of training, oversight and discipline of correctional officers accused of such behavior." *See Document No. 66.*

Ultimately, the pleadings reflect that following the DOC's PREA investigation, Newsome's employment with the DOC was terminated and the matter was referred to the Pennsylvania State Police ("PSP"). In July of 2023, PSP initiated an investigation into Newsome's misconduct, a criminal complaint was filed, and Newsome pled guilty to three counts of sexual assault. *See Document No. 66.*

Defendants filed a motion to dismiss the TAC in its entirety. The Magistrate issued a Report & Recommendation ("R&R") that Defendants' motion should be granted in part and denied in part. Specifically, it was recommended that the motion be granted as to all claims against Little, Zaken and Sigler, as well as Count III as to all Defendants. It was further recommended that the motion be denied as to Counts I and II against Graves, Dugan, McCurdy and Hoback, along with Count IV as to Graves, Dugan and Hoback. *See Document No. 74.*

Objections

1. Defendants object to the Magistrate's recommendation that Counts I and II should proceed against Graves, Dugan, McCurdy and Hoback under a theory of supervisory liability, absent actual knowledge of any constitutional violations.

The Magistrate highlighted the facts in the TAC that he accepted as true for purposes of deciding Defendants' motion to dismiss. Specifically, prior to Newsome assaulting S.A., PSS McClellan informed Dugan and McCurdy that she "overheard Newsome making inappropriate comments to the female inmates and behaving inappropriately with them." Additionally, McCurdy and Hoback allegedly witnessed Newsome "inappropriate[ly] socializing with inmates;" Dugan, McCurdy and Hoback did not address this "unspecified improper socializing." Notably, however, "the TAC does not describe the conduct on which [Plaintiffs] base this characterization." Subsequently, in August of 2023, McCurdy, Dugan and Hoback informed S.A. and A.M.#2 that Newsome had confessed that something had happened between them and other inmates; it was not until that time that S.A. and A.M.#2 reported they had

been assaulted. In July of 2023, PSP opened an investigation and Newsome was criminally charged in July of 2024. *See Document No. 74.*

In his analysis, the Magistrate noted the required knowledge to demonstrate personal involvement in a constitutional claim "must be actual, not constructive." Although the official need not personally observe a subordinate's misconduct, the pleading "must at least allege facts to show that circumstances placed the Defendant on notice of the misconduct." *See Document No. 74.*

Incongruously, and acknowledging the allegations "remain vague," the Magistrate then proceeds to opine that because the complaint "cast[s] the abuse as pervasive [it] circumstantially supports an inference that Graves, Dugan, McCurdy and Hoback knew of it based on their involvement in day-to-day matter[s] of security and PREA compliance."[2] *See Document No. 74.* To the extent Plaintiffs have attempted to rely on statistics concerning PREA investigations conducted throughout the DOC's institutions to demonstrate Defendants' awareness of a systemic or "pervasive" issue, this fails to establish their deliberate indifference. Conversely, this information unequivocally belies Plaintiffs' argument as it highlights that policies and procedures are in place to address and investigate reports of sexual abuse. Indeed, as the pleadings reflect, when institutional staff became aware of complaints

---

[2] Directly undercutting this point, Defendants note these individuals did *not* have "direct supervisory authority" over Newsome. Defendants McCurdy, Hoback and Dugan were Security Office Staff during the relevant timeframe in 2023, and as such, they would not have been in a supervisory role with respect to corrections officers on the units. As a Corrections Officer I, Newsome would have been supervised by a Commissioned Officer on his assigned unit.

concerning Newsome's conduct, these policies/procedures were followed and appropriate action was taken: the allegations were investigated; PSP was contacted; and Newsome was discharged from his employment with the DOC and criminally charged.

Consistent with his astute acknowledgment that supervisory liability requires actual—not merely constructive—knowledge, the Magistrate highlights meaningful distinctions regarding the alleged participation of the Defendants. First, concerning Graves, the R&R does not identify any form of communication or notice of any issues she received, akin to the email McClellan allegedly sent to Dugan and McCurdy. Consequently, it is apparent that the baseless inference of Graves's actual knowledge is impermissibly premised solely upon her position as Superintendent.

Next, as to Hoback, the allegations demonstrate nothing more than that she may have observed Newsome "socializing inappropriately" with inmates. Such vague allegations cannot reasonably be said to demonstrate actual knowledge of any sexual misconduct, and certainly not to demonstrate awareness of the risk of sexual assault. Likewise, with respect to Dugan and McCurdy, the pleadings reflect nothing more than that they were advised of unspecified inappropriate comments and behavior.

The Magistrate fails to analyze the facts to determine whether Defendants had actual knowledge of a substantial risk of sexual assault—as opposed to broad awareness of potentially unprofessional behavior that is not violative of the Constitution. As a result, the Magistrate's determination is flawed and does not support a finding of supervisory liability.

Along these lines, throughout the pleadings Plaintiffs point to various "red flags" that should have alerted Defendants to Newsome's misconduct. These issues are not "red flags," but rather are "red herrings" sprinkled throughout the pleadings, and which have absolutely no bearing on whether the named Defendants had any actual knowledge of or involvement with the specific incidents alleged regarding these Plaintiffs. Undeniably, Newsome is the only Defendant against whom Plaintiffs presented any factual allegations concerning sexual abuse. The pleadings are devoid of any indication that the other named Defendants had any reason to believe Plaintiffs were at risk of harm prior to or at the time of the alleged assaults.

To wit, the Magistrate inconsistently notes that although the reported reference to Newsome "socializing inappropriately" is "vague and standing alone would not support knowledge of Newsome's misconduct, it has some circumstantial relevance at this stage of the case." The Magistrate concluded the allegations concerning the supervisory Defendants that were "physically present" at the institution—as opposed to the supervisory Defendants headquartered at Central Office (Little and Zaken)—"are sufficient to support their actual knowledge of Newsome's abusive conduct" to demonstrate their deliberate indifference. *See Document No. 74.* Undoubtedly, this is an unreasonable, untenable standard that is not in accord with well-established standards to demonstrate supervisory liability. Simply because the Defendants were "physically present" at the institution, it certainly does not follow that they had actual knowledge of Newsome's misdeeds.

Relatedly, insofar as Plaintiffs' claims are premised upon "information and

belief," absent any non-conclusory supporting allegations, such assertions are insufficient to survive a motion to dismiss. Consequently, Plaintiffs' baseless insinuations that Defendants were aware of or involved with the alleged assaults—in any capacity—fail to state a claim for relief. *See Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (when deciding a motion to dismiss, the court need not credit either bald assertions or legal conclusions in a complaint); *Ashcroft v. Iqbal*, 556 U.S. at 680-81 (conclusory allegations are "not entitled to be assumed true"); *McDermott v. Clondalkin Group, Inc.,* 649 Fed.Appx. 263, 268 (3d Cir. 2016) (plaintiff "may plead allegations based upon information and belief, so long as he does not rely on boilerplate and conclusory allegations and he accompanies his legal theory with allegations that make his theoretically viable claim plausible."). Simply stated, the Court should not and need "not accept as true Plaintiffs' bald and conclusory assertions" that Defendants acted with deliberate indifference and were "aware of [a] pervasive risk of harm faced by the Plaintiff[]." *Pasquarello v. Murphy,* 2022 WL 1665016, *7, fn.8 (D. N.J. May 25, 2022); *Iqbal*, 556 U.S. at 678. *See also Farmer v. Brennan,* 511 U.S. 825, 833-34 (1994); *Bennett v. Washington,* 2015 WL 731227, *10 (E.D.Pa. February 19, 2015),; *Tabb v. Hannah,* 2012 WL 3113856, at *5 (M.D.Pa. July 30, 2012); *Riley v. Jeffes,* 777 F.2d 143, 147 (3d Cir. 1985)).

The pleadings reflect nothing more than that some of the Defendants were advised at an unspecified time that Newsome had been observed "behaving inappropriately" or making "inappropriate comments." It is an enormous, unsupported leap from "behaving inappropriately" to sexual assault. There is simply

no factual basis to support the inference that being advised of unspecified inappropriate behavior, equated to knowledge that Newsome was sexually assaulting inmates—it is certainly not sufficient to show actual knowledge on the part of any remaining Defendants. *See Tierno v. Shaup*, 2022 WL 943037, *10 (M.D.Pa. March 29, 2022) (quoting *Farmer,* 511 U.S. at 838) ("[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under [the Supreme Court's] cases be condemned as the infliction of punishment."). S*ee also, e.g., Jones v. Beard,* 145 F. App'x 743, 745 (3d Cir. 2005) (finding defendants were not deliberately indifferent to a risk that plaintiff's cellmate would attack him, where the record was "devoid of evidence establishing that [plaintiff] articulated specific threats of serious harm"); *Blackstone v. Thompson,* 568 F. App'x 82, 84 (3d Cir. 2014) (finding no deliberate indifference where there were "no longstanding, pervasive, well-documented, or previously noted tensions" between plaintiff and his cellmate, and nothing in the record showing plaintiff told defendant "of any specific incident or cause of tension between the cellmates from which a greater inference of risk could be drawn").

Plaintiffs' weak attempt to establish Defendants acted with deliberate indifference due to their alleged failure to "provide adequate protection and prevention to vulnerable females," fares no better. Liability for failure to protect "may not be predicated on exposure to *any* risk of serious harm; the risk must be 'substantial.'" Therefore, "[t]he mere possibility that an injury may result from an activity does not mean that there is a 'substantial risk' of the injury occurring."

*Bennett,* 2015 WL 731227 at *9 (citing *Betts v. New Castle Youth Dev. Cntr.,* 621 F.3d 249, 257-58 (3d Cir. 2010), *Helling v. McKinney,* 509 U.S. 25, 33 (1993), *Baze v. Rees,* 553 U.S. 35, 50 (2008)). *See also Cox v. Nobles,* 15 F.4th 1350, 1361-62 (11th Cir. 2021) (finding plaintiff's argument that a violation of PREA violates the Eighth Amendment *per se*, was without merit, as there is "no authority to support the proposition that a litigant can circumvent long-established Eighth Amendment jurisprudence by alleging a violation of the PREA in a conclusory fashion;" thus, plaintiff's claim, "whether based on a violation of PREA or not, is in essence a claim that the defendants failed to protect her from abuse").

The Magistrate also fails to account for an additional flaw in Plaintiffs' supervisory liability claims—specifically, S.A. and A.M.#2 did not report their assaults until approached by Dugan, McCurdy and Hoback in August of 2023, well after the assaults. As such, it may not reasonably be said these Defendants had actual knowledge or otherwise disregarded a risk prior to the assaults. This issue is essential to the deliberate indifference analysis, yet it was not addressed by the Magistrate. *See Beers-Capitol v. Whetzel,* 256 F.3d 120, 137 (3d Cir. 2001).

In the end, Plaintiffs' apparent position that upon receiving unspecified, unsubstantiated allegations of "inappropriate" comments or conduct, Defendants should have promptly escorted Newsome from the institution and terminated his employment without first investigating and verifying, is untenable and patently absurd. Defendants' decision to investigate was reasonable and does not establish their personal involvement in any of the alleged constitutional injuries. Accepting as

true that A.M.#1 reported Newsome's misconduct in "approximately" May of 2023, Defendants unquestionably took prompt action. Upon receipt of a PREA complaint, an investigation was initiated, following which appropriate action was taken—namely, Newsome's employment was terminated and PSP was contacted and initiated an investigation in July of 2023 (prior to S.A. and A.M.#2 reporting assaults in August of 2023), leading to his arrest and conviction. The system worked precisely as it should. Therefore, Count I should be dismissed.

Similarly, the excessive force claim at Count II should also be dismissed as to Graves, Dugan, McCurdy and Hoback. In the context of an excessive force claim, the essential question is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Brooks v. Kyler,* 204 F.3d 102, 106 (3d Cir. 2000) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)); *Whitley v. Albers*, 475 U.S. 312, 321 (1986).

Within footnote 2 of the R&R, the Magistrate recognizes the excessive force claim at Count II is duplicative and based on the same conduct as Plaintiffs' other Eighth Amendment claims. However, the Magistrate then inexplicably recommended this duplicative claim should proceed against Graves, Dugan, McCurdy and Hoback, absent any explanation. To be sure, Plaintiffs do not contend that any of these Defendants perpetrated, witnessed, or were otherwise involved in the actual assaults. As such, Plaintiffs fail to state a claim for excessive/unreasonable force.

2. <u>Defendants object to the Magistrate's recommendation that the failure to train claim at Count IV should proceed against Defendants Graves, Dugan and Hoback.</u>

A supervisor is only liable under § 1983 for failure to train or supervise subordinates if the failure constitutes deliberate indifference to the rights of those individuals with whom the subordinate will be in contact. *See Smart v. Borough of Bellmawr,* 2013 WL 2933638, *1 (3d Cir. June 17, 2013). Further, only where the need for "more or different training … is so obvious, and the inadequacy so likely to result in constitutional violations, that the failure to train … can fairly be said to represent official policy," and that failure to train "actually causes injury," may a supervisor be held liable. *Id.*

The Magistrate correctly noted that liability for failure to train requires an identifiable training deficiency, deliberate indifference, and a causal connection between that alleged deficiency and the injury. However, the Magistrate then incorrectly and inconsistently found that "although the TAC does not specify the specific roles of Graves, Dugan, and Hoback, the areas of responsibility the TAC attributes to each allows for a plausible inference regarding their respective training responsibilities." The TAC also alleges "albeit vaguely, the deficiencies in training upon which they base their claim:" "proper handling and investigation of allegations of sexual misconduct, including correctional officers targeting inmates;" "proper oversight of correctional officers in charge of the safety and well-being of inmates, including observing and being able to identify red flag behavior in correctional officers;" and, "properly addressing reports and/or complaints of sexual misconduct by correctional officers upon receiving reports of inappropriate conduct by inmates." Plaintiffs baldly assert that "ineffective training methods," allowed for Newsome to

be transferred between units following reports of harassment/assault. *See Document No. 74.*

Thus, Plaintiffs arrgued "[t]he need for training and supervision was obvious given the predictable constitutional consequences of untrained correctional officers sexually assaulting inmates and/or supervisor in handling inappropriate conduct," citing, *inter alia*, statistics of "rampant sexual harassment and misconduct by staff," an unspecified prior PREA allegation against Newsome, and prior unrelated lawsuits against "other correctional officers." According to Plaintiffs, "Defendants" "look[ed] the other way and ignor[ed] complaints, rumors and red flag signs by Newsome, thus ratifying his conduct," and "discourag[ed] or fail[ed] to require communication by correctional officers to their supervisors of concerning behavior by Defendant Newsome." *See Document No. 66.*

Initially, Plaintiffs' reference to the DOC's reported statistics as evidence of "rampant sexual harassment and misconduct by staff against inmates," is a gross mischaracterization. In truth, the statistics reflect that there were only **23** substantiated claims of out **1,195** claims of harassment and sexual misconduct investigated in 2021, and **26** substantiated claims out of **1,217** such claims in 2022. These numbers in no way demonstrate an obvious, sweeping systemic deficiency. Next, Newsome was indeed held accountable for his actions, following Defendants' thorough investigation into the allegations, in accordance with their training and Department policy.

As discussed in detail above in the context of the Eighth Amendment claims, none of these Defendants were advised of or disregarded information concerning sexual misconduct—to the contrary, it is evident that the pleadings establish nothing more than that at an unspecified time, Defendants Dugan and McCurdy were advised that Newsome was behaving inappropriately or unprofessionally. These allegations fall woefully short of demonstrating their awareness of sexual misconduct.

More to the point, the pleadings simply fail to identify any actual deficiency in an existing training program or to explain what training Newsome did or did not receive. The pleadings are devoid of any facts to establish that different training would have prevented Newsome's actions. Instead, the pleadings and the R&R rely on alleged knowledge of potential misbehavior as a substitute for knowledge that an employee's training was constitutionally deficient. This is not the standard.

Nevertheless, Plaintiffs' baseless, conclusory claims are unquestionably insufficient to demonstrate the training was obviously deficient or that any such perceived deficiency was the cause of any constitutional injury. Plaintiffs cannot demonstrate that any of the named Defendants were responsible for or otherwise failed to train Newsome not to assault inmates. *See Evancho, McDermott, supra.* However, the pleadings do reflect that in circumstances where staff members fail to follow their training and conduct themselves professionally, policies and procedures are in place to investigate allegations. It is patently clear that these policies were employed correctly and swiftly, culminating in Newsome's termination from the DOC and arrest by PSP.

Moreover, Plaintiffs' claim is primarily based upon alleged deficiencies with the training procedures relative to investigating PREA complaints, which fails to provide any support for their argument that the Department failed to provide some nebulous form of training to instruct staff not to assault inmates. *See City of Canton v. Harris,* 489 U.S. 378, 391 (1989) (requiring a direct causal connection between an identified training deficiency and the alleged constitutional harm). Since Dugan and McCurdy are the security officers that were tasked with conducting these investigations, the Magistrate's determination is particularly perplexing—specifically, as to how they are liable for alleged deficiencies in their own training. Further, as noted above, these individuals were not responsible for supervising or training corrections staff on the units. As for Graves, the pleadings simply fail to shed any light as to her awareness of these perceived deficiencies, and it is apparent the claims are impermissibly levied against by virtue of her role as Superintendent.

Ultimately, the underlying premise for Plaintiffs' claims is fundamentally flawed: Defendants' awareness of a PREA allegation simply does not warrant the removal of the accused officer from his post or barring him from the institution pending the outcome of an investigation. The Magistrate, as Plaintiffs also do within the pleadings, improperly conflates allegations of deficient supervision and disciplinary responses, with allegations of constitutionally deficient training—without identifying a plausible causal connection between an identifiable training deficiency and harm to Plaintiffs.

In this case, the security staff Defendants responded appropriately by investigating the claims before taking disciplinary action against Newsome. The decision to investigate and determine the validity of the *allegations* before terminating Newsome's employment and contacting PSP, does not constitute deliberate indifference or otherwise evidence deficiencies in training/supervision.

Accordingly, Count IV must be dismissed for failure to state a claim for relief.

Conclusion

WHEREFORE, Defendants object to the Magistrate's findings and seek dismissal of the claims against Defendants Graves, Dugan, McCurdy and Hoback.

Respectfully submitted,

Office of General Counsel

By: /s/ Kelly J. Stewart

Kelly J. Stewart
Assistant Counsel
Attorney I.D. No. 202917
Pennsylvania Dept. of Corrections
Office of Chief Counsel
1920 Technology Parkway
Mechanicsburg, PA 17050
(717) 728-7749
Email: kjstewart@pa.gov

Dated: November 25, 2026

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| S.A., A.M.#1 & A.M.#2, | : | |
| | : | Civil Action No. 24-cv-00343 |
| Plaintiffs, | : | |
| | : | |
| v. | : | Judge Susan Paradise Baxter/ |
| | : | Chief Magistrate Judge Lanzillo |
| PENNSYLVANIA DEPARTMENT | : | |
| OF CORRECTIONS, et al., | : | |
| | : | |
| Defendants. | : | Filed via Electronic Case Filing |

**CERTIFICATE OF SERVICE**

I hereby certify that the within brief has been filed electronically and is available for viewing and downloading from the ECF system by counsel for Plaintiffs and therefore satisfies the service requirements under *Fed.R.Civ.P. 5(b)(2)(E); L.Cv.R. 5.6.*

/s/ Kelly J. Stewart
Kelly J. Stewart
Assistant Counsel

Dated: November 25, 2026